GREENBERG TRAURIG, LLP
Hal M. Hirsch (HH 0417)
David Jay (DJ 7221)
200 Campus Drive
P.O. Box 677
Florham Park, New Jersey 07932-0677
Phone: (973) 360-7900
Fax: (973) 301-8410

*Attorneys for the AremisSoft Liquidating Trust*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>AREMISSOFT CORPORATION,<br>a Delaware corporation,<br><br>Debtor.<br><br>- AND -<br><br>In re:<br><br>AREMISSOFT CORPORATION<br>SECURITIES LITIGATION | Civil Action No. 02-CV-01336 (JAP)<br>Honorable Joel A. Pisano<br><br>Chapter 11<br>Bankruptcy Case No. 02-32621 (RG)<br><br><br>Civil Action No. 01-CV-2486 (JAP) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF AREMISSOFT
LIQUIDATING TRUST FOR APPROVAL OF PAYMENT OF DISHONORED
DISTRIBUTION CHECKS DEPOSITED OR CASHED BY BENEFICIARIES WITHIN
THE DISTRIBUTION PERIOD, AND FOR RELATED RELIEF**

## TABLE OF CONTENTS

**Page**

I. FACTS ..................................................................................................................2

II. THIS COURT SHOULD AUTHORIZE RE-ISSUANCE OF CERTAIN DISTRIBUTIONS DEPOSITED OR SOUGHT TO BE CASHED TIMELY BY AUTHORIZED CLAIMANTS ..................................................................................2

    1. Presentment ...............................................................................................3

    2. The Midnight Deadline ..............................................................................3

    3. Expiration After Ninety (90) Days ............................................................5

III. CONCLUSION ....................................................................................................7

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Chrysler Credit Corp. v. First Nat. Bank & Trust Co. of Washington,*
   746 F.2d 200, 203 (3d Cir. 1984) ...................................................................................5

*IBP, Inc. v. Mercantile Bank of Topeka,*
   6 F.Supp.2d 1258 (D. Kan. 1998)....................................................................................6

*NBT Bank, Nat. Ass'n v. First Nat. Community Bank,*
   393 F.3d 404, 410 (3d Cir. 2004) ....................................................................................4

**STATE CASES**

*City Check Cashing, Inc. v. Manufacturers Hanover Trust Co.,*
   166 N.J. 49, 57-58, 764 A.2d 411, 415-16 (N.J. 2001) ..................................................5

*Scott D. Liebling, P.C. v. Mellon PSFS (NJ) National Association,*
   311 N.J. Super. 651, 710 A.2d 1067 (N.J. 1998) ...........................................................6

**STATUTES**

U.C.C. §3-103 ........................................................................................................................3

U.C.C. §3-105 ........................................................................................................................3

U.C.C. §3-501 ........................................................................................................................3

U.C.C. §4-104 ........................................................................................................................3

U.C.C. §4-301 ........................................................................................................................2

U.C.C. §4-302 ........................................................................................................................2

U.C.C. §4-303 ........................................................................................................................4

6 Del.C. §3-103 ......................................................................................................................3

6 Del.C. §3-501 ......................................................................................................................3

6 Del.C. §4-104 ......................................................................................................................4

6 Del.C. §4-105 ......................................................................................................................3

6 Del.C. §4-301 ......................................................................................................................3

6 Del.C. §4-302 ......................................................................................................................3

6 Del.C. §4-303 ......................................................................................................................4

**OTHER AUTHORITIES**

5A *Lawrence's Anderson on the Uniform Commercial Code,*
   §3-105:27 (3d ed. 2005) .................................................................................................6

GREENBERG TRAURIG, LLP
Hal M. Hirsch (HH 0417)
David Jay (DJ 7221)
200 Campus Drive
P.O. Box 677
Florham Park, New Jersey 07932-0677
Phone: (973) 360-7900
Fax: (973) 301-8410

*Attorneys for the AremisSoft Liquidating Trust*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>AREMISSOFT CORPORATION,<br>a Delaware corporation,<br><br>Debtor. | Civil Action No. 02-CV-01336 (JAP)<br>Honorable Joel A. Pisano<br><br>Chapter 11<br>Bankruptcy Case No. 02-32621 (RG) |
| - AND -<br><br>In re:<br><br>AREMISSOFT CORPORATION<br>SECURITIES LITIGATION | Civil Action No. 01-CV-2486 (JAP) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF AREMISSOFT
LIQUIDATING TRUST FOR APPROVAL OF PAYMENT OF DISHONORED
DISTRIBUTION CHECKS DEPOSITED OR CASHED BY BENEFICIARIES WITHIN
THE DISTRIBUTION PERIOD, AND FOR RELATED RELIEF**

The AREMISSOFT LIQUIDATING TRUST (the "Trust"), by Joseph P. LaSala and

Fred S. Zeidman, trustees (the "Trustee"), by and through the Trust's counsel, GREENBERG

TRAURIG, LLP, hereby respectfully submits this Memorandum of Law in support of the *Motion

of AremisSoft Liquidating Trust for Approval of Payment of Dishonored Distribution Checks*

*Deposited or Cashed by Beneficiaries within the Distribution Period, and for Related Relief* (the "Motion"), as follows:

## I.
## FACTS

The applicable facts are set forth in the Motion and incorporated herein by reference. Capitalized terms not otherwise defined are as set forth in the Motion.

## II.
## THIS COURT SHOULD AUTHORIZE RE-ISSUANCE OF CERTAIN DISTRIBUTIONS DEPOSITED OR SOUGHT TO BE CASHED TIMELY BY AUTHORIZED CLAIMANTS

**The Application of Delaware Law**

The Trust, in accordance with the Liquidating Trust Agreement, is governed by the law of Delaware. The Liquidating Trust Agreement, which provides for the establishment of the Trust, states:

> This Trust Agreement shall be governed by, construed under and interpreted in accordance with the laws of the State of Delaware. . . .

Liquidating Trust Agreement, §8.7. In construing whether the Trust may be authorized to re-issue certain distribution checks, therefore, this Court should apply the laws of the State of Delaware.

**The Uniform Commercial Code**

The Uniform Commercial Code (the "UCC"),[1] augmented by federal regulation, provides a comprehensive framework for allocating and apportioning the risks of handling checks. The Delaware legislature, like those of other states, has made policy choices in allocating liability in the collection of checks. The pertinent policy choices made by the legislature enacting the UCC are reflected closely in the Delaware counterpart to U.C.C. §§4-301 and 4-302. *See*, 6 Del.C. §4-

---

[1] The full text of UCC §§4-301 and 4-302 is attached as Appendix A.

301-302.[2]  The check payment system under the UCC and corresponding Delaware law is summarized as follows.

1. Presentment

"Presentment" is a formal demand to pay an instrument. U.C.C. §3-501(a); 6 Del.C. §3-501(a). "Presentment means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee." 6 Del.C. §3-501(a). The presenting bank is "a bank that is presenting an item except a payor bank." U.C.C. §3-105(6); 6 Del.C. §4-105(6). Thus, each beneficiary's depositor bank is the presenting bank.

The drawee "means a person ordered in the draft to make payment." U.C.C. §3-103(a)(4); 6 Del.C. §3-103(2).[3] In plain language, the drawee is the person to whom the check is made payable. The payor bank is "a bank that is the drawee of a draft." U.C.C. §3-105(3); 6 Del.C. §4-105(3). The payor bank is the bank to which the drawee presents his or her check for payment or deposit. This indicates the bank from which the drawer, or the maker, of the check ordered the funds to be withdrawn, here Chase, which held the Special Account for the Trust.

2. The Midnight Deadline

Upon presentment of a check, a payor bank must either pay or dishonor the check by a midnight deadline. U.C.C. §4-301(a); 6 Del.C. §4-301(a). The precise deadline is midnight on the next banking day following the day on which the bank receives the relevant item, or from which the time for taking action commences to run, whichever is later. U.C.C. §4-104(a)(10); 6

---

[2] The full text of 6 Del.C. §§4-301 and 4-302 is attached as Appendix B.

[3] In contrast, the drawer is "a person who signs or is identified in a draft as a person ordering payment." U.C.C. §3-103(a)(5); 6 Del.C. §3-103(3). Similarly, the "maker" is "a person who signs or is identified in a note as a person undertaking to pay." U.C.C. §3-103(a)(7); 6 Del.C. §3-103(5).

Del.C. §4-104(a)(10).[4] In most states, "it is well established that sections 4-301 and 4-302 of the Uniform Commercial Code create a statutory doctrine of strict accountability by the payor bank to the presenting bank if notice is not accomplished within the midnight deadline." *NBT Bank, Nat. Ass'n v. First Nat. Community Bank*, 393 F.3d 404, 410 (3d Cir. 2004).

If, for example, the payor bank is late – beyond the midnight deadline – in transmitting the check for payment to the presenting bank, the payor bank "becomes accountable for the amount of the item under Section 4-302 dealing with the payor bank's responsibility for late return of items." U.C.C. §4-303(a)(4); 6 Del.C. §4-303(a)(4). As a general rule, the payor bank, as opposed to the presenting bank, is accountable for payment only where certain intervening legal events, as described in U.C.C. §4-303, apply; *see also*, 6 Del.C. §4-303.[5]

---

[4] "Midnight deadline with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." 6 Del.C. §4-104(a)(10).

[5] U.C.C. §4-303 sets forth the rules for determining the relative priorities between various legal events concerning an item presented for payment as follows:

(a) Any knowledge, notice, or stop-payment order received by, legal process served upon, or setoff exercised by a payor bank comes too late to terminate, suspend, or modify the bank's right or duty to pay an item or to charge its customer's account for the item if the knowledge, notice, stop-payment order, or legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the earliest of the following:

(1) the bank accepts or certifies the item;
(2) the bank pays the item in cash;
(3) the bank settles for the item without having a right to revoke the settlement under statute, clearing-house rule, or agreement;
(4) the bank becomes accountable for the amount of the item under Section 4-302 dealing with the payor bank's responsibility for late return of items; or
(5) with respect to checks, a cutoff hour no earlier than one hour after the opening of the next banking day after the banking day on which the bank received the check and no later than the close of that next banking day or, if no cutoff hour is fixed, the close of the next banking day after the banking day on which the bank received the check.

(b) Subject to subsection (a), items may be accepted, paid, certified, or charged to the indicated account of its customer in any order.

U.C.C. §4-303; 6 Del.C. §4-303.

4

In the normal course, presentment of a check triggers a bank's electronic processing systems:

> The Uniform Commercial Code . . . provides that a payor bank must pay, return or dishonor a check within the midnight deadline following presentment to or receipt by the bank. . . . These limitations require that payor banks make decisions on demand items to insure prompt payment to a chain of individuals and institutions in a fluid commercial transaction.

*Chrysler Credit Corp. v. First Nat. Bank & Trust Co. of Washington*, 746 F.2d 200, 203 (3d Cir. 1984). *See also City Check Cashing, Inc. v. Manufacturers Hanover Trust Co.*, 166 N.J. 49, 57-58, 764 A.2d 411, 415-16 (N.J. 2001) ("Under the Code, the bank must decide by the midnight deadline, usually electronically, whether to pay or dishonor a check, and commercial certainty is provided to banks, customers, and non-customers in the process").

Under both the Uniform Commercial Code and its Delaware counterpart, it is apparent that where a drawee presents to his or her bank a check for payment or deposit on the ninetieth (90th) day, that bank has a deadline of midnight on the following banking day – the ninety-first (91st) day – to present the check for payment by the payor bank.

3.   Expiration After Ninety (90) Days

On the Withdrawal Date, September 22, 2005, the ninety-first (91st) day following the Distribution Date, the Trust withdrew all remaining Funds from the Special Account. This was to assure that no checks deposited after the ninety (90) day Distribution Period would be paid, contrary to the Undeliverable Claim Order and the notices delivered to the Authorized Claimants with their distribution checks.

The Trustees chose to shepherd the cash in the Special Account so that it would be returned to the exclusive control of the Trust immediately after the expiration of the Distribution Period. As set forth in the Motion, the funds restored to the Trust approximated only $3.6

million out of approximately $140 million. The Trustees were aware that late depositors would have to be the subject of a Motion, but did not want untimely depositors to be paid contrary to the distribution scheme. Banks are generally not liable for payment on void or stale checks, absent reckless lack of due care, given the automated system in place which governs the nation's check clearing system. *See, e.g., IBP, Inc. v. Mercantile Bank of Topeka*, 6 F.Supp.2d 1258 (D. Kan. 1998); *Scott D. Liebling, P.C. v. Mellon PSFS (NJ) National Association*, 311 N.J. Super. 651, 710 A.2d 1067 (N.J. 1998).

The "voiding" clause on a check (such as "void after ninety (90) days") has the same effect as though a stop payment order were given. There would be no question but that a check would remain negotiable although the drawer told the drawee that he would stop payments on it if it were not presented within a stated time." 5A *Lawrence's Anderson on the Uniform Commercial Code*, §3-105:27 (3d ed. 2005). "By analogy, it would seem that the 'voiding' clause is in effect merely a form of stop payment order which is recognized by the drawee bank and should not be held to be an impairment of the negotiability of the check prior to the expiration of that time. Even after the expiration of the 'voiding' time the check is still negotiable . . . ." *Id.* Thus, the Trustees' action to sweep the account on a timely basis. It is not clear from the U.C.C. or case law that a "void after ninety days" legend requires the payee to deposit his or her check on the eighty-seventh (87th) day so that the national inter-banking system can actually get the payee paid on or before the ninetieth (90th) day. Nevertheless, the Trustees believe the right course at this time is to allow these particular Gap Beneficiaries to be paid.

The Trustees believe the check stub notice and the "void" notice on the checks themselves suffice to support dishonoring of checks (as between the Trust and the beneficiary) not fully negotiated and paid by the ninetieth (90th) day. Nevertheless, the Trustees submit that the relief sought in the Motion is proper and fair to the affected beneficiaries and comports with the Trustees' fiduciary duties.

Beneficiaries who deposited or sought to cash their distribution checks at their banks on or near the ninetieth (90th) day would not be paid thereon given the necessity to transmit the checks in the inter-banking system, the timely sweep of the Special Account on the ninety-first (91st) day and therefore the lack of funds with which the payor bank could honor those checks. While the Trustees believe they acted properly to shepherd the Trust's cash on the ninety-first (91st) day, the Trustees also respectfully believe the beneficiaries who deposited their checks on or before the ninetieth (90th) day of the Distribution Period should be paid thereon.

### III.
### CONCLUSION

WHEREFORE, this Court should grant the relief sought in the Motion for the reasons set forth therein and in this Memorandum of Law, and such other and further relief as is just and proper.

Dated: December 29, 2005                GREENBERG TRAURIG, LLP

By: _____
Hal M. Hirsch
David Jay
200 Campus Drive
P.O. Box 677
Florham Park, New Jersey 07932-0677
(973) 360-7900

*Attorneys for the AremisSoft Liquidating Trust*

7

## Appendix A

### Unif. Commercial Code §4-301

**§4-301. Posting; Recovery of Payment by Return of Items; Time of Dishonor; Return of Items by Payor Bank.**

(a) If a payor bank settles for a demand item other than a documentary draft presented otherwise than for immediate payment over the counter before midnight of the banking day of receipt, the payor bank may revoke the settlement and recover the settlement if, before it has made final payment and before its midnight deadline, it

    (1) returns the item;

    (2) returns an image of the item, if the party to which the return is made has entered into an agreement to accept an image as a return of the item and the image is returned in accordance with that agreement; or

    (3) sends a record providing notice of dishonor or nonpayment if the item is unavailable for return.

(b) If a demand item is received by a payor bank for credit on its books, it may return the item or send notice of dishonor and may revoke any credit given or recover the amount thereof withdrawn by its customer, if it acts within the time limit and in the manner specified in subsection (a).

(c) Unless previous notice of dishonor has been sent, an item is dishonored at the time when for purposes of dishonor it is returned or notice sent in accordance with this section.

(d) An item is returned;

    (1) as to an item presented through a clearing house, when it is delivered to the presenting or last collecting bank or to the clearing house or is sent or delivered in accordance with clearing-house rules; or

    (2) in all other cases, when it is sent or delivered to the bank's customer or transferor or pursuant to instructions.

A-2

**Unif. Commercial Code §4-302**

**§4-302. Payor's Bank Responsibility for Late Return of Item.**

(a) If an item is presented to and received by a payor bank, the bank is accountable for the amount of:

(1) a demand item, other than a documentary draft, whether properly payable or not, if the bank, in any case in which it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, whether or not it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

(2) any other properly payable item unless, within the time allowed for acceptance or payment of that item, the bank either accepts or pays the item or returns it and accompanying documents.

(b) The liability of a payor bank to pay an item pursuant to subsection (a) is subject to defenses based on breach of a presentment warranty (Section 4- 208) or proof that the person seeking enforcement of the liability presented or transferred the item for the purpose of defrauding the payor bank.

**6 Del. C. §4-301**

DELAWARE CODE ANNOTATED
TITLE 6. COMMERCE AND TRADE
SUBTITLE I. UNIFORM COMMERCIAL CODE
ARTICLE 4. BANK DEPOSITS AND COLLECTIONS
PART 3. COLLECTION OF ITEMS: PAYOR BANKS

**§4-301 Deferred posting; recovery of payment by return of items; time of dishonor; return of items by payor bank.**

(a)   If a payor bank settles for a demand item other than a documentary draft presented otherwise than for immediate payment over the counter before midnight of the banking day of receipt, the payor bank may revoke the settlement and recover the settlement if, before it has made final payment and before its midnight deadline, it

(1)   returns the item; or

(2)   sends written notice of dishonor or nonpayment if the item is unavailable for return.

(b)   If a demand item is received by a payor bank for credit on its books, it may return the item or send notice of dishonor arid may revoke any credit given or recover the amount thereof withdrawn by its customer, if it acts within the time limit and in the manner specified in subsection (a).

(c)   Unless previous notice of dishonor has been sent, an item is dishonored at the time when for purposes of dishonor it is returned or notice sent in accordance with this section.

(d)   An item is returned:

(1)   As to an item presented through a clearing house, when it is delivered to the presenting or last collecting bank or to the clearing house or is sent or delivered in accordance with clearing-house rules; or

(2)   In all other cases, when it is sent or delivered to the bank's customer or transferor or pursuant to instructions.

**6 Del. C. §4-302**

<u>DELAWARE CODE ANNOTATED</u>
<u>TITLE 6. COMMERCE AND TRADE</u>
<u>SUBTITLE I. UNIFORM COMMERCIAL CODE</u>
<u>ARTICLE 4. BANK DEPOSITS AND COLLECTIONS</u>
PART 3. COLLECTION OF ITEMS: PAYOR BANKS

**§4-302 Payor bank's responsibility for late return of item.**

(a) If an item is presented to and received by a payor bank, the bank is accountable for the amount of:

(1) A demand item, other than a documentary draft, whether properly payable or not, if the bank, in any case in which it is not also the depository bank, retains the item beyond midnight of the banking day of receipt without settling for it or, whether or not it is also the depository bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

(2) Any other properly payable item unless, within the time allowed for acceptance or payment of that item, the bank either accepts or pays the item or returns it and accompanying documents.

(b) The liability of a payor bank to pay an item pursuant to subsection (a) is subject to defenses based on breach of a presentment warranty (Section 4-208) or proof that the person seeking enforcement of the liability presented or transferred the item for the purpose of defrauding the payor bank.

ny2-fs1\828617v05